Argued April 3, reversed and decree rendered April 17, motion for stay of judgment denied June 12, 1917.

## DRAGSETH *v.* MASON.

(164 Pac. 376.)

**Waters and Watercourses—Enjoining Dam—Sufficiency of Evidence.**

1.  Substantially uncontradicted evidence that defendant's dam backed water on to plaintiff's land, preventing cultivation of some land, and interfering with pumping pure water to his house, *held* to require an injunction against such an obstruction of the stream.

[As to rights and liabilities of owners of dams, see note in 57 Am. Dec. 684.]

From Hood River: WILLIAM BRADSHAW, Judge.

Suit by Martin Dragseth against A. I. Mason.   From a decree denying relief, plaintiff appeals.   Reversed and decree rendered.

Department 2.   Statement by MR. JUSTICE BEAN.

This is a suit to restrain the defendant from obstructing a stream so as to back water onto plaintiff's land.   From a decree denying relief to the latter, he appeals.

Plaintiff Dragseth and defendant Mason are the owners of adjoining tracts of land in Hood River Valley, except that there is a forty-foot county road between their holdings. Defendant's property lies immediately north of that of plaintiff. A stream of water enters Dragseth's premises on the east and flows northwesterly across the county road into and through the lands of the defendant discharging into Hood River. In its natural state this stream was winding but plaintiff straightened the same through his low land, removed logs and brush, and placed about 700 feet of tiling therein to drain the same. About 300 feet south of defendant's land and near this stream plaintiff installed a ram for the purpose of forcing water to his dwelling from a spring owned by him. In order to improve his land in 1911 the defendant erected in the middle of the channel of this stream at the south line of his land a cement basin, octagonal in shape and about 51 inches in height. This was done over plaintiff's protest. This basin is so constructed that the waters of the stream flow into it through an incision on the south side, the north side being solid, and drop to the floor therein. Strings of tile leading from the bottom of the basin conduct the water from thence to the premises of the defendant on the north, there to operate a ram and other contrivances for his personal use. Plaintiff complains that this construction raises the water in the stream, hinders its flow, backs it into his ram pit, and retards the drainage of his low lands adjoining so that they cannot be cultivated to advantage; that these waters flow through chicken-yards, hog-pens and the like before reaching his premises, into which stream there is also discharged above him the sewage from the tanks and toilets of the school-house.          REVERSED. DECREE RENDERED.

For appellant there was a brief and an oral argument by *Mr. A. J. Derby.*

For respondent there was a brief and an oral argument by *Mr. George R. Wilbur.*

MR. JUSTICE BEAN delivered the opinion of the court.

1. The question presented is one of fact. Counsel for defendant does not contend that Mason has the right to back the water onto plaintiff's land to his damage as charged in the complaint. It appears from the evidence that Dragseth has owned his tract since 1901. In 1903 he commenced to drain the low land along the stream and arranged his tiling so that the main part or trunk of the system emptied into the creek a short distance south of Mason's line where the stream had not been changed, the lower end of the tiling being above the surface of the water so that it drained the land. In 1911 Mason constructed in the bed of the creek a cement octagonal box six feet across with wing dams reaching across the creek, the back or north side being about 51 inches in height or 40 inches above the floor, and the south side or intake 20 inches from the bottom. This was done in order to turn the water into the tiling connected with the basin, one string of which was higher than the other at this end and carried water to Mason's ram and furnished power for pumping. At that time Mason changed the location of some of his tiling and raised the end towards Dragseth's land. After this obstruction was placed in the bed of the stream water backed up onto Dragseth's premises for about 300 feet to where he had a ram and submerged it. Silt accumulated in the creek so that the end of plaintiff's tiling which before that time was above the surface of the water was about 16 inches below the soil in

the brook and the lower part of his land could not be drained, was very swampy and would not raise crops. Dragseth states that the cement work raised the water in the creek 20 to 24 inches above its natural flow; that in times of high water the highest part of the cement basin serves as a dam and raises the water four or five feet. In the principal part of his statement he is corroborated by his neighbor farmers and road supervisor.

We have looked carefully through the evidence to find any substantial contradiction of plaintiff's claim and find none only in theory. The very competent civil engineer who took levels of the creek, basin, tiling, ram, etc., drew a diagram of the premises, and testified as a witness in the case, for some reason was not requested to place his opinion in the balance. Other than nonexpert witnesses expressed their views. On cross-examination Mr. Mahr, witness for plaintiff, testified thus in regard to the water of this stream:

"Well, apparently; of course, the way it is now, apparently the water is kind of held back in order to strike that one pipe, there, that top pipe."

In order to divert water from its natural channel it is ordinarily necessary to construct a dam in the stream at least part of the way across the same. To turn the water into his tiling Mason did as people usually do, but instead of calling the obstruction a dam, termed a portion thereof a cement basin; nevertheless it served the same purpose as a dam and as the evidence clearly shows obstructs the water so as to throw it back onto Dragseth's land about 300 feet. This is not a great distance, but the result prevents Dragseth from cultivating a small amount of good land and interferes with the successful operation of his ram so as to pump impure creek water to his house instead of pure spring water. Mr. Mason states that there is too much fall

in the creek.   We are unable to determine whether he erected the south end of his tile too high by accident or on account of convenience.   We find that the cement basin is an obstruction to this stream of water to plaintiff's damage; that all that part of the cement work of the basin above the lower floor thereof should be removed; and that defendant should be enjoined from obstructing the stream to that extent.   The decree of the lower court will therefore be reversed and one entered in accordance herewith.

It appears that both parties have made an honest effort to ascertain their rights in the premises and that there has been no willful trespass on the part of the defendant.   We believe the ends of justice will be served if each party pays his own costs, therefore neither will be allowed costs.   REVERSED.   DECREE RENDERED.

MR. JUSTICE MOORE, MR. JUSTICE BENSON and MR. JUSTICE McCAMANT concur.